**IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NVN MANAGEMENT, LLC., | ) | |
| d/b/a ARBOR LODGING MANAGEMENT | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-3160 |
| | ) | |
| GLOBAL HOTEL SOLUTIONS, INC., | ) | |
| d/b/a HOTEL SOLUTIONS, INC., and | ) | |
| FRAN MURR, CPA, CHAE, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' ANSWER AND
<u>AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT</u>**

NOW COME the Defendants, Global Hotel Solutions, Inc., d/b/a Hotel Solutions, Inc. ("Hotel Solutions"), and Fran Murr ("Murr"), by and through their undersigned counsel, and as for their Answer to the Complaint of the Plaintiff, NVN Management, LLC., d/b/a Arbor Lodging Management ("NVN"), states as follows:

1.      Plaintiff NVN Management, LLC, d/b/a Arbor Lodging Management ("NVN") is a Delaware limited liability company with its principal place of business at 566 W. Lake Street, Suite 320, Chicago, IL 60661. NVN's members are Sheena Patel, an Illinois citizen; Vamsi Bonthala, an Illinois citizen; Krishnakant Sangani, a New Jersey citizen and Suresh Patel, a New Jersey citizen. None of NVN's members are residents of the State of Texas, which is Defendants' state of citizenship for purposes of diversity.

**RESPONSE:** Defendants admit, upon information and belief, the allegations contained in Paragraph 1 of the Complaint.

2.      From its offices in Illinois, NVN, operating under the name Arbor Lodging Management, provides hotel management services for a national portfolio of hotels.

**RESPONSE:**  Defendants admit, upon information and belief, the allegations contained in Paragraph 2 of the Complaint.

3.      Defendant Global Hotel Solutions, Inc., d/b/a Hotel Solutions, Inc. ("Hotel Solutions"), is a Texas corporation with its principal place of business at 4121 State Hwy 6 South, Suite 240, College Station, TX 77845.  Hotel Solutions provides monthly accounting services, acquisition support services, accounting software implementation and training, tax preparation, advisory services, and consulting services for clients in the hospitality industry across the nation, including in Illinois.

**RESPONSE:**  Defendants deny that Hotel Solution's address is at 4121 State Highway 6 South, Suite 240, College Station, Texas 77845 in paragraph 3. Defendants admit to the remaining portion of paragraph 3.

4.      Defendant Fran Murr is Texas resident, residing in College Station, Texas. (For sake of privacy, this complaint does not list the full address of Ms. Murr's residence.)  Fran Murr is the President of Hotel Solutions and directed Hotel Solutions' business at all times.  Fran Murr's business address is 4121 State Hwy 6 South, Suite 240, College Station, TX 77845.

**RESPONSE:**  Defendants deny that Fran Murr's business address is at 4121 State Highway 6 South, Suite 240, College Station, Texas 77845 in paragraph 3. Defendants admit to the remaining portion of paragraph 4.

5.      Fran Murr is a certified public accountant ("CPA"), subject to the American Institute of CPAs' Professional Code of Contact and state ethical and regulatory rules and standards for licensed CPAs.

**RESPONSE:** Defendants admit to the allegations in paragraph 5.

6.      Fran Murr is also a certified hospitality accountant executive ("CHAE"), an accounting certification specific to the hotel industry, and is subject to the Code of Ethics for CHAEs.

**RESPONSE:** Defendants admit to the allegations in paragraph 6.

<u>**Jurisdiction and Venue**</u>

1.      This Court has jurisdiction over NVN's claims against Hotel Solutions and Fran Murr because NVN is completely diverse from both Hotel Solutions and Fran Murr under 28 U.S.C. 1332(a)(l) and the amount in controversy exceeds $75,000 as further detailed below.

**RESPONSE:** Defendants deny the allegations contained in paragraph 1 and puts Plaintiff to his burden of proof thereof, except admits that they are residents of the State of Texas.

2.      Hotel Solutions purposely directed its activities to Illinois and this litigation arises from those activities, including but not limited to:

a.   Breaching its fiduciary duties as an accounting and tax-related service provider to NVN, with the harm from those breaches being borne by NVN in Illinois;

**RESPONSE:** Defendants deny the allegations in paragraph 2(a).

b.   Initiating the contractual relationship with NVN, a business operating in Chicago, Illinois that Hotel Solutions knew operated out of Chicago, Illinois;

**RESPONSE:** Defendants admit to the allegations in paragraph 2(b).

c.   Sending the subject contract and related documents to NVN in Illinois;

**RESPONSE:** Defendants admit to the allegations in paragraph 2(c).

d.   Including in the subject contract a choice-of-law provision stating that Illinois law governs the parties' contractual relationship;

**RESPONSE:** Defendants admit to the allegations in paragraph 2(d).

e. Processing, preparing, and submitting tax documents, including Illinois tax

documents, for NVN;

**RESPONSE:** Defendants admit to the allegations in paragraph 2(e).

f. Maintaining NVN's Illinois-based accounting software;

**RESPONSE:** Defendants admit to the allegations in paragraph 2(f).

g. Inputting accounting and cash-flow information in NVN's Illinois-based accounting

systems;

**RESPONSE:** Defendants admit to the allegations in paragraph 2(g).

h. Submitting monthly reports, including income statements and budgets, to NVN in

Illinois for review by NVN in Illinois and as the basis for NVN's hotel management

conducted in Illinois;

**RESPONSE:** Defendants admit to the allegations in paragraph 2(h).

i. Providing services to NVN utilizing NVN's Illinois-based records and software; and

**RESPONSE:** Defendants admit to the allegations in paragraph 2(i).

j. Providing services to NVN utilizing information compiled by NVN in Illinois and

transmitted by NVN in Illinois.

**RESPONSE:** Defendants admit to the allegations in paragraph 2(j).

3.        Fran Murr is subject to specific personal jurisdiction in this Court because she

breached her fiduciary duties as CPA to NVN, with the harm from those breaches being borne by

NVN in Illinois. Fran Murr is further subject to specific personal jurisdiction in this Court

because she directed her fraudulent misrepresentations to NVN personnel in Illinois and NVN

bore the impact of those fraudulent misrepresentations in Illinois.

4

**RESPONSE:** Defendants deny the allegations in paragraph 3 in its entirety.

4.      This Court is the proper venue for NVN's claims under 28 U.S.C.§ 1391(b) because a substantial parts of the events giving rise to NVN's claims occurred in Chicago, Illinois, which is within this District.

**RESPONSE:** Defendants deny the allegations in paragraph 4.

<u>**The parties entered into the May 2017 Contract.**</u>[1]

5.      On May 8, 2017, Hotel Solutions sent NVN a copy of the Hotel Accounting Services Agreement between the parties, with an effective date of May 2017 (the "May 2017 Contract").

**RESPONSE:** Defendants admits to the allegations in paragraph 5.

6.      The parties did not sign the May 2017 Contract document, but on May 25, 2017, in emails between NVN and Hotel Solutions, NVN and Hotel Solutions agreed in writings signed by each of the parties to the terms of the May 2017 Contract.

**RESPONSE:** Defendants admit that the May 2017 contract was not signed by the parties as stated in paragraph 6; however, Defendants deny that there was an agreement as to the terms of the May 2017 contract.

7.      In Hotel Solutions' May 25 emails, it stated "[w]e're very happy and feel very fortunate to be working with Arbor {NVN} !"

**RESPONSE:** Defendants lack knowledge or information to form a belief about the truth allegations contained in paragraph 7.

---

[1] Defendants deny the parties entered into a May 2017 contract.

8.      Under Section 10.5 of the May 2017 Contract, "[t]his Agreement shall be construed, both as to its validity and as to the performance of the parties, in accordance with the laws of the state of Illinois."

**RESPONSE:**  Defendants admit to the allegations in paragraph 8.

9.      Under Section 3.1 of the May 2017 Contract, "[t]his Agreement shall remain in effect for **no less than 20 Months** and thereafter until either party terminates by providing no less than 60 days written notice."

**RESPONSE:**  Defendants admit to the allegations in paragraph 9.

10.      Thus, under Section 3.1 of the May 2017 Contract, the term of the May 2017 Contract was from May 2017 through December 2018, and could not be terminated prior to December 2018.

**RESPONSE:**  Defendants deny the allegations contained in paragraph 10 as the May 2017 contract was not executed between the parties.

11.      Under the May 2017 Contract, Hotel Solutions was to provide accounting and tax preparation services to NVN, including but not limited to:

a. Implement, manage and maintain NVN's M3 accounting software system;

b. Preparation and timely submission of all required sales, excise and occupancy tax filings and related documents;

c. Cash-flow oversight and accounting for NVN's properties, including maintenance of spreadsheets to track cash management;

d. Prepare and process accounts payable and issue vendor checks;

e. Preparation of payroll journals;

f. Coding and entry of charges in NVN's system for NVN's mortgage, insurance, and

taxes;

g. Preparation of monthly reports, monthly income and expenses statements, balance

sheets, and budgets for each hotel managed by NVN to facilitate the review of this

information and business planning by NVN representatives in Illinois;

h. Preparation and completion of general ledger reconciliations, and

i. As-needed training on issues related to accounting and NVN's M3 accounting software

system.

**RESPONSE:** Defendants deny the allegations contained in paragraph 11, including subparts

(a)-(i), as the May 2017 contract was not executed between the parties.

12.     As a manager of hotel properties, NVN relied on Hotel Solutions to perform all its

obligations under the May 2017 Contract to ensure that NVN could properly manage its portfolio

of hotels, maintain its M3 accounting software, meet payroll, comply with its tax and insurance

obligations, and avoid penalties and fines for failure to meet its tax and insurance obligations.

**RESPONSE:** Defendants lack knowledge or information to form a belief about the truth

allegations contained in paragraph 12.

13.     In reliance on Hotel Solutions agreeing to perform its obligations under the May

2017 Contract through at least December 2018, NVN did not hire personnel or other vendors to

perform the accounting and tax-preparation services Hotel Solution agreed to perform through

December 2018.

**RESPONSE:** Defendants lack knowledge or information to form a belief about the truth

allegations contained in paragraph 13.

14.     NVN agreed to pay Hotel Solutions $1450 per month for each full service hotel property in the portfolio of hotels for which Hotel Solutions provided services.

**RESPONSE:**  Defendants lack knowledge or information to form a belief about the truth allegations contained in paragraph 14.

15.     NVN agreed to pay Hotel Solutions $1150 per month for each limited service hotel property in the portfolio of hotels for which Hotel Solutions provided services.

**RESPONSE:**  Defendants lack knowledge or information to form a belief about the truth allegations contained in paragraph 15.

16.     On average, NVN paid Hotel Solutions a total of $19,500 per month under the May 2017 Contract.

**RESPONSE:**  Defendants deny the allegations contained in paragraph 16 as the May 2017 contract was not executed between the parties.

17.     NVN paid Hotel Solutions the agreed monthly rates through December 2017 at which point Hotel Solutions unilaterally ended the relationship with NVN.

**RESPONSE:**  Defendants deny the allegations contained in paragraph 17 as the May 2017 contract was not executed between the parties.

18.     NVN fully performed its obligations under the May 2017 Contract.  In fact, NVN performed more than its agreed obligations once Hotel Solutions stopped performing services that Hotel Solutions agreed to perform under the May 2017 Contract.

**RESPONSE:**  Defendants deny the allegations contained in paragraph 18 as the May 2017 contract was not executed between the parties.

## Hotel Solutions breaches the May 2017 Contract.[2]

19.     The parties operated under the May 2017 Contract until without notice on September 12, 2017, less than four months into the 20 month term of the May 2017 Contract, Hotel Solutions, via an email from Fran Murr, demanded NVN enter in a new agreement with Hotel Solutions.

**RESPONSE:**  Defendants deny the allegations contained in paragraph 19 as the May 2017 contract was not executed between the parties.

20.     In Fran Murr's September 12, 2017 email demanded that NVN pay $1700 per month for each full service property (a 17% price increase) and $1400 per month (a 22% price increase) for each limited service property.

**RESPONSE:**  Defendants admit the allegations in paragraph 20.

21.     In her September 12, 2017 email, Fran Murr stated that the price increases would be "effective starting with [Hotel Solutons'] October services.

**RESPONSE:**  Defendants admits to the allegations in paragraph 21.

22.     In her September 12, 2017 email, Fran Murr stated that if NVN would not capitulate to Hotel Solution's demand for a new agreement, Hotel Solutions would continue services for November and December 2017 at the unilaterally-increased rates and would cease providing any services to NVN at the end of December 2017.

**RESPONSE:**  Defendants admits to the allegations in paragraph 22.

23.     Beginning in November 2017, Fran Murr directed Hotel Solutions to stop performing many accounting services it agreed to perform under the May 2017 Contract, including but not limited to:

a. Preparing and maintaining general ledger reconciliations;

---

[2] Defendants deny any breach of a May 2017 contract.

b. Preparing monthly income reports and budgets;

c. Preparing and submitting tax-related documents;

d. Preparing and maintaining accounting software, and

e. Inputting information in accounting software.

**RESPONSE:** Defendants deny the allegations contained in paragraph 23, including subparts (a)-(e), as the May 2017 contract was not executed between the parties.

24.     Despite attempting to force NVN into a new agreement with increased rates, on October 9, 2017, Fran Murr again confirmed in writing in an email to NVN that the parties' agreement was "through Dec. 2018 beginning May 2017."

**RESPONSE:** Defendants deny the allegations contained in paragraph 24 as the May 2017 contract was not executed between the parties.

25.     Hotel Solutions has never provided written 60-day notice of termination of the May 2017 Contract and could not have provided such notice of termination prior to December 2018.

**RESPONSE:** Defendants deny the allegations contained in paragraph 25 as the May 2017 contract was not executed between the parties.

26.     Due to the abrupt nature of Hotel Solutions' and Fran Murr's decision to unilaterally stop performing under the terms agreed to in the May 2017 Contract, NVN was forced to incur substantial costs to minimize disruption to its business, maintain its accounting, maintain payroll, manage cash flow for its portfolio of hotels, pay invoices and meet its tax obligations.  The costs incurred by NVN have included:

a. Hiring new NVN personnel to perform certain accounting services Hotel Solutions had agreed to perform through December 2018;

b. Hiring a new vendor at higher rates than the monthly rates under the May 2017

Contract to perform certain services Hotel Solutions had agreed to perform through

December 2018;

c. Having NVN's VP of Finance perform hundreds of hours of overtime to perform

certain accounting services Hotel Solutions had agreed to perform through December

2018; and

d. Buying additional software and paying for training on and maintenance of that

software to duplicate certain services Hotel Solutions had agreed to perform through

December 2018.

**RESPONSE:**  Defendants deny the allegations contained in paragraph 26 as the May 2017

contract was not executed between the parties.  Further answering, Defendants lack knowledge

or information to form a belief about the truth allegations contained in this paragraph, including

subparts (a)-(d).

27.      NVN has been forced to incur at least $235,420 in costs it would not otherwise

have incurred if Hotel Solutions had met its obligations under the May 2017 Contract.  Since

NVN is still in the process of planning its recovery from Hotel Solutions' breach, NVN

continues to incur costs due to the breach.

**RESPONSE:**  Defendants deny the allegations contained in paragraph 27 as the May 2017

contract was not executed between the parties.  Further answering, Defendants lack knowledge

or information to form a belief about the truth allegations contained in this paragraph as to any

alleged damages incurred by NVN.

28.      Hotel Solutions' abrupt termination of services included not preparing and timely

submitting certain the tax-related documents that Hotel Solutions agreed to prepare and submit

under the May 2017 Contract.  Hotel Solutions is thus subject to potential tax-related penalties and fines directly caused by Hotel Solution's breach.  The potential tax-related penalties and fines is unknown at this time, but if incurred represent further costs NVN has been forced to bear due to Hotel Solutions' breach.

**RESPONSE:**  Defendants deny the allegations contained in paragraph 28 as the May 2017 contract was not executed between the parties.

### Hotel Solutions never intended to honor the May 2017 Contract.[3]

29.     Based on information from former employees of Hotel Solutions, Fran Murr held an internal meeting of Hotel Solutions' employees around the time that Fran Murr directed Hotel Solutions to enter into the May 2017 Contract.  Based on information from former employees of Hotel Solutions, at this meeting Fran Murr stated that Hotel Solutions never intended to honor the May 2017 Contract and would demand NVN pay rates in excess of the rates agreed to under the May 2017 Contract.

**RESPONSE:**  Defendants deny the allegations contained in paragraph 29.  Further, the May 2017 contract was not executed between the parties.

30.     Despite not intending to honor the rates in the May 2017 Contract, Fran Murr directed Hotel Solutions personnel to secure NVN's agreement to the May 2017 Contract and confirm to NVN that Hotel Solutions would operate under the May 2017 Contract.

**RESPONSE:**  Defendants deny the allegations contained in paragraph 30.  Further, the May 2017 contract was not executed between the parties.

---

[3] Defendants deny a May 2017 contract was ever executed between the parties.

31.     From the time the parties negotiated and entered into the May 2017 Contract until Fran Murr demanded NVN pay higher-than-agreed rates on September 12, 2017, Fran Murr never told NVN that she and Hotel Solutions would not honor the May 2017 Contract.

**RESPONSE:**  Defendants deny the allegations contained in paragraph 31.  Further, the May 2017 contract was not executed between the parties.

32.     At the time Fran Murr secured NVN' s agreement to the May 2017 Contract, Fran Murr knew that she did not intend to honor the agreed rates in the May 2017 Contract and would direct Hotel Solutions not to perform its contractual obligations through December 2018.

**RESPONSE:**  Defendants deny the allegations contained in paragraph 32.  Further, the May 2017 contract was not executed between the parties.

33.     Fran Murr knew that by securing NVN's agreement to the May 2017 Contract and never telling NVN that Hotel Solutions did not intend to honor the May 2017 Contract, NVN would plan its operations and pay Hotel Solutions in reliance on receiving services from Hotel Solutions until December 2018 at the rates agreed to in the May 2017 Contract.

**RESPONSE:**  Defendants deny the allegations contained in paragraph 33.  Defendants deny the allegations contained in paragraph 33 as the May 2017 contract was not executed between the parties.

34.     NVN planned its business operations, including personnel decisions, relying on Hotel Solutions providing the agreed services at the agreed rates through December 2018.

**RESPONSE:**  Defendants deny the allegations contained in paragraph 34.  Defendants deny the allegations contained in paragraph 34 as the May 2017 contract was not executed between the parties.

35.     NVN's reliance was reasonable because the parties had agreed to the May 2017 Contract under which Hotel Solutions agreed to provide services at the agreed rates through December 2018.

**RESPONSE:** Defendants deny the allegations contained in paragraph 35 as the May 2017 contract was not executed between the parties.

36.     NVN's reliance was also reasonable because neither Fran Murr or any other Hotel Solutions personnel told NVN that Fran Murr did not intend to honor the May 2017 Contract.

**RESPONSE:** Defendants deny the allegations contained in paragraph 36 as the May 2017 contract was not executed between the parties.

37.     Due to NVN's reliance on Fran Murr's representations that Hotel Solutions would perform the May 2017 Contract despite Fran Murr's intent not to honor the May 2017, Contract, coupled with Fran Murr directing Hotel Solutions to cease performing service it agreed to perform under the May 2017 Contract, NVN has incurred and continued to incur substantial costs.  The costs incurred by NVN have included:

a. Hiring new NVN personnel to perform certain accounting services Hotel Solutions had agreed to perform through December 2018;

b. Hiring a new vendor at higher rates than the monthly rates under the May 2017 Contract to perform certain services Hotel Solutions had agreed to perform through December 2018; and

c. Buying additional software and paying for training on and maintenance of that software to duplicate certain services Hotel Solutions had agreed to perform through December 2017; and

d. Preparing and submitting tax-related documents that NVN failed to prepare and

timely submit as it agreed to under the May 2017 Contract.

**RESPONSE:** Defendants deny the allegations contained in paragraph 37. Further answering, Defendants lack knowledge or information to form a belief about the truth of the allegations contained in this paragraph's subparts (a)-(d).

38. NVN has been forced to incur at least $235,420 in costs it would not otherwise have incurred if Hotel Solutions had met its obligations under the May 2017 Contract. Since NVN is still in the process of planning its recovery from Hotel Solutions' breach, NVN continues to incur costs due to the breach.

**RESPONSE:** Defendants deny the allegations contained in paragraph 38 as the May 2017 contract was not executed between the parties. Further answering, Defendants lack knowledge or information to form a belief about the truth of as to any alleged damages to NVN as contained in this paragraph.

39. Hotel Solutions' abrupt termination of services included not preparing and timely submitting certain the tax-related documents that Hotel Solutions agreed to prepare and submit under the May 2017 Contract. Hotel Solutions is thus subject to potential tax-related penalties and fines directly caused by Hotel Solution's breach. The potential tax-related penalties and fines is unknown at this time, but if incurred represent further costs NVN has been forced to bear due to Hotel Solutions' breach.

**RESPONSE:** Defendants deny the allegations contained in paragraph 39. Defendants deny the allegations contained in paragraph 39 as the May 2017 contract was not executed between the parties.

## Count I Breach of Contract against Hotel Solutions

40.     NVN incorporates its allegations in paragraphs I through 38 as if fully stated in this paragraph 39.  [*sic*]

**RESPONSE:**  Defendants incorporate their answers in paragraphs 1 through 39 above as if fully stated in this response.

41.     The May 2017 Contract is a binding and enforceable contract between Hotel Solutions and NVN.

**RESPONSE:** Defendants deny the allegations contained in paragraph 41 as the May 2017 contract was not executed between the parties.

42.     The term of the May 2017 Contract was from May 2017 through December 2018, and could not be terminated prior to December 2018.

**RESPONSE:** Defendants deny the allegations contained in paragraph 42 as the May 2017 contract was not executed between the parties.

43.     NVN fully performed its obligations under the May 2017 Contract.

**RESPONSE:** Defendants deny the allegations contained in paragraph 42 as the May 2017 contract was not executed between the parties.

44.     Hotel Solutions breached its obligations under the May 2017 Contract, including:

a. Ceasing to perform services prior to December 2018;

b. Demanding NVN pay rates higher than the monthly rates Hotel Solutions proposed and agreed to under the May 2017 Contract;

c. Refusing to prepare and maintaining general ledger reconciliations;

d. Refusing to prepare monthly income reports and budgets;

e. Refusing to prepare and submit tax-related documents;

f. Refusing to prepare and maintain accounting software, and

g. Refusing to input information in accounting software.

**RESPONSE:** Defendants deny the allegations contained in paragraph 44 as the May 2017 contract was not executed between the parties.

45.  Hotel Solutions' breaches proximately caused and continues to cause NVN to suffer damages as detailed above in an amount of at least $235,420.

**RESPONSE:**  Defendants deny the allegation contained in paragraph 45 as the May 2017 contract was not executed between the parties.  Further, Defendants lack knowledge or information to form a belief about the truth of the allegations of damages contained in paragraph 45.

### Count II – Breach of Fiduciary Duty against Hotel Solutions and Fran Murr

46.  NVN incorporates its allegations in paragraphs 1 through 44 as if fully stated in this paragraph 45.  [*sic*]

**RESPONSE:**  Defendants incorporate their answers in paragraphs 1 through 45 above as if fully stated in this response.

47.  Fran Murr is a registered CPA and, through her company Hotel Solutions provides accounting services to the hospitality industry.

**RESPONSE:**  Defendants admit the allegations contained in paragraph 47.

48.  As a CPA and CHAE Fran Murr holds herself out as an accounting expert in the hospitality industry.

**RESPONSE:**  Defendants admit the allegations contained in paragraph 48.

49.  Similarly as a provider of accounting and tax-related services, Hotel Solutions itself out as accounting experts in the hospitality industry.

**RESPONSE:** Defendants admit the allegations contained in paragraph 49.

50.     On its website, Hotel Solutions states that its "values" include that "[w]e are fair to all parties and act with integrity."

**RESPONSE:** Defendants admit the allegations contained in paragraph 50.

51.     Under the May 2017 Contract, Hotel Solutions agreed to provide accounting and tax-related services to NVN, including managing the financial affairs of the portfolio of hotels managed by NVN and accurately and timely preparing and submitting tax filings.

**RESPONSE:** Defendants deny the allegations contained in paragraph 51 as the May 2017 contract was not executed between the parties.

52.     NVN entrusted Hotel Solutions to provide accounting and tax-related services to NVN, including managing the financial affairs of the portfolio of hotels managed by NVN and accurately and timely preparing and submitting tax filings.

**RESPONSE:** Defendants deny the allegations contained in paragraph 52 as the May 2017 contract was not executed between the parties.

53.     NVN depended on Hotel Solutions to provide accounting and tax-related services to NVN, including managing the financial affairs of the portfolio of hotels managed by NVN and accurately and timely preparing and submitting tax filings.

**RESPONSE:** Defendants deny the allegations contained in paragraph 53 as the May 2017 contract was not executed between the parties.

54.     Fran Murr and Hotel Solutions were fiduciaries of NVN.

**RESPONSE:** Defendants deny the allegations contained in paragraph 54 as the May 2017 contract was not executed between the parties.

55.     By refusing to perform accounting and tax-related services for the agreed term of the May 2017 Contract unless NVN paid higher than the agreed rates for those services, Fran Murr and Hotel Solutions breached their fiduciaries duties of care and loyalty by putting their pecuniary interests above their obligation to provide accounting services and tax-related services to NVN.

**RESPONSE:** Defendants deny the allegations contained in paragraph 55 as the May 2017 contract was not executed between the parties.

56.     By refusing to disclose that they never intended to honor the terms of the May 2017 Contract, Fran Murr and Hotel Solutions breached their fiduciary duty to disclose all relevant facts to NVN, particularly knowing that NVN entrusted Hotel Solutions and depended on Hotel Solutions for NVN's accounting and tax-related needs.

**RESPONSE:**  Defendants deny the allegations contained in paragraph 56.  Defendants deny the allegations contained in paragraph 56 as the May 2017 contract was not executed between the parties.

57.     By refusing to prepare and file tax-related documents because NVN would not capitulate to Fran Murr's and Hotel Solutions' demand to pay higher than the agreed rates for these services, and thus exposing NVN to penalties and fines, Fran Murr and Hotel Solutions breached their fiduciary duties of care and loyalty to NVN.

**RESPONSE:** Defendants deny the allegations contained in paragraph 57 as the May 2017 contract was not executed between the parties.

58.     Both Fran Murr and Hotel Solutions breached their fiduciary duties willfully, wantonly, maliciously, or oppressively.

**RESPONSE:**  Defendants deny the allegations contained in paragraph 58.

59.     As a direct and proximate result of Fran Murr's and Hotel Solutions' breaches, NVN has been suffered and continues to suffer damages of at least $235,420.

**RESPONSE:**  Defendants deny the allegation of breach contained in paragraph 59.  Further, Defendants lack knowledge or information to form a belief about the truth of the allegations of damages contained in paragraph 59.

60.     Due to the willful, wanton, malicious, or oppressive nature of Fran Murr's and Hotel Solutions' breaches, both Fran Murr and Hotel Solutions are liable for punitive damages, including but not limited to NVN's attorneys' fees.

**RESPONSE:**  Defendants deny the allegation of breach contained in paragraph 60.

### Count III – Fraud against Hotel Solutions and Fran Murr

61.     NVN incorporates its allegations in paragraphs I through 59 as if fully stated in this paragraph 60.  [*sic*]

**RESPONSE:**  Defendants incorporate their answers in paragraphs 1 through 60 above as if fully stated in this response.

62.     Hotel Solutions' agreement to provide accounting and tax-related services to NVN through at least December 2018 under the terms of the May 2017 Contract was material to NVN's decision to enter into the May 2017 Contract.

**RESPONSE:**  Defendants deny the allegations contained in paragraph 62 as the May 2017 contract was not executed between the parties.

63.     NVN entrusted its accounting and tax-related services to Hotel Solutions relying on Fran Murr's and Hotel Solutions' standing as accountants specializing in the hospitality industry.

20

**RESPONSE:** Defendants deny the allegations contained in paragraph 63 as the May 2017 contract was not executed between the parties.

64.     Additionally, NVN planned its business, including making personnel decisions, relying on Hotel Solutions' agreement to perform its obligations under the May 2017 Contract.

**RESPONSE:** Defendants deny the allegations contained in paragraph 64 as the May 2017 contract was not executed between the parties.

65.     Unbeknownst to NVN, at the time Hotel Solutions was securing NVN's agreement to the May 2017 Contract, Fran Murr was telling Hotel Solutions' employees that Fran Murr did not intend to honor the May 2017 Contract and would cut off Hotel Solutions' services to NVN if NVN did not capitulate to Fran Murr's demand to pay higher-than-agreed rates for those services.

**RESPONSE:** Defendants deny the allegations contained in paragraph 65 as the May 2017 contract was not executed between the parties.

66.     Fran Murr never disclosed that she did not intend to honor the May 2017 Contract and would cut off Hotel Solutions' services to NVN if NVN did not capitulate to Fran Murr's demand to pay higher-than-agreed rates for those services.

**RESPONSE:** Defendants deny the allegations contained in paragraph 66 as the May 2017 contract was not executed between the parties.

67.     NVN's reasonably relied on Fran Murr's and Hotel Solutions' representations and agreement that they would honor their obligations under the May 2017 Contact and provide the agreed services at the agreed rates.

**RESPONSE:** Defendants deny the allegations contained in paragraph 67 as the May 2017 contract was not executed between the parties.

68.     Fran Murr's and Hotel Solutions' fraudulent conduct caused NVN to be unprepared for suddenly transitioning accounting and tax-preparation services to NVN personnel and a new vendor.

**RESPONSE:**  Defendants deny the allegations contained in paragraph 68.

69.     Fran Murr's and Hotel Solutions' fraudulent conduct has proximately caused NVN to incur at least $235,420 in costs NVN would not have had to incur but for Fran Murr's and Hotel Solutions' fraud.

**RESPONSE:**  Defendants deny the allegation of fraudulent conduct contained in paragraph 69. Further, Defendants lack knowledge or information to form a belief about the truth of the allegations of damages contained in paragraph 69.

70.     Further, Fran Murr's and Hotel Solutions' fraudulent conduct coupled with their failure to prepare and submit tax-related documents has exposed NVN to potential penalties and fines.

**RESPONSE:**  Defendants deny the allegation of fraudulent conduct contained in paragraph 70. Further, Defendants lack knowledge or information to form a belief about the truth of the allegations of potential penalties contained in paragraph 70.

**WHEREFORE**, Defendants, Global Hotel Solutions, Inc., d/b/a Hotel Solutions, Inc. and Fran Murr requests that this Court enter judgment in their favor and against Plaintiff, and for such other and further relief as is appropriate.

## AFFIRMATIVE DEFENSE

### Lack of Contract Formation

1.     On May 8, 2017, Hotel Solutions sent NVN a copy of a proposed Hotel Accounting Services Agreement between the parties, with an effective date of May 2017 (the "May 2017 Contract").

2.     The parties did not sign the May 2017 Contract document, and never agreed to the terms of the proposed May 2017 Contract.

3.     The parties neither agreed to nor accepted the May 2017 Contract and continued to operate under the parties' previously signed and executed contract.

4.     As such, the May 2017 Contract was never formed and cannot establish a basis for any claim purported to arise out of that unexecuted contract.

    **WHEREFORE**, Defendants, Global Hotel Solutions, Inc., d/b/a Hotel Solutions, Inc. and Fran Murr requests that this Court enter judgment in their favor and against Plaintiff, and for such other and further relief as is appropriate.

**Dated**:  July 9, 2018                                          **RESPECTFULLY SUBMITTED**,

                                                  /s/ Kristi T. Stark

                                                  Kristi T. Stark
                                                  Daniel Stark P.C.
                                                  100 West William J. Bryan
                                                  Bryan, Texas  77803
                                                  (214) 783-4258
                                                  (*Pro hac vice* pending)

                                                  /s/ Ethan E. White
                                                  Ethan E. White
                                                  Emery Law, Ltd.
                                                  3 Grant Square, #268
                                                  Hinsdale, Illinois 60521
                                                  (630) 984-0339

                                                  *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I, the undersigned, being first duly sworn upon oath, depose, and say that I caused to be served the foregoing document by electronically filing the same with the Clerk for the U.S. District Court for the Northern District of Illinois, Eastern Division, a copy of which was then forwarded to each attorney of record by CM/ECF on July 9, 2018.

Dated: July 9, 2018                    RESPECTFULLY SUBMITTED,

By: /s/ Ethan E. White

**EMERY LAW, LTD.**
Ethan E. White
3 Grant Square, #268
Hinsdale, Illinois 60521
(630) 984-0339 (direct)
ewhite@emerylawltd.com